IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CLAUDE K. HILTON, JR.,
Plaintiff,

vs. Case No.: 5:08cv260/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
Defendant.
_________________________________/

**REPORT AND RECOMMENDATION**

This cause is before the court upon a "Petition for Authorization of Attorney Fee Pursuant to the Social Security Act," filed by Plaintiff's counsel (hereinafter "Petitioner") (Doc. 24), and Defendant's response thereto (Doc. 27). Petitioner seeks attorney's fees pursuant to 42 U.S.C. § 406(b) for services provided to Plaintiff in connection with Plaintiff's claim for Social Security Disability Insurance Benefits ("DIB") (Doc. 24).

I. BACKGROUND

Petitioner was retained by Plaintiff to represent him in connection with his claim for DIB (*see* Doc. 24, Ex. G).[1] On May 31, 2006, Plaintiff signed a fee agreement with Petitioner, which in relevant part provides that Petitioner's fee "for successful prosecution of [Plaintiff's] case is 25% of the back pay awarded upon reversal of any Unfavorable ALJ Decision" (*id.*). Plaintiff's claim for DIB (filed August 11, 2003, alleging disability between July 8, 2003, and March 26, 2006) was denied initially and upon reconsideration by the Commissioner of the Social Security Administration ("Commissioner"); thereafter, following a hearing, an Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's claim; and the Appeals Council subsequently denied Plaintiff's request

[1] Petitioner did not label the exhibits attached to the instant motion. Therefore, in this Report the undersigned will refer to the exhibits as Exhibit A – Exhibit H, as there are eight separate documents attached to the motion.

for review (*id.*). Thus, on August 21, 2008, the instant action was initiated by the filing of a complaint, in which Plaintiff sought reversal of the Commissioner's final decision, denying the DIB application filed on August 11, 2003 (*id.*).

On December 4, 2008, the Commissioner filed an answer to Plaintiff's complaint and a certified copy of the transcript of the administrative proceedings below (Docs. 7, 8). Plaintiff was then directed to file a memorandum in support of his complaint on or before February 3, 2009 (*see* Doc. 9). However, prior to the due date of Plaintiff's memorandum and before Plaintiff had filed a memorandum, the Commissioner filed a Motion to Remand pursuant to sentence four of Title 42 U.S.C. § 405(g) (Doc. 10). The Commissioner asserted that remand was appropriate because Plaintiff was awarded benefits, pursuant to a subsequently-filed application for benefits, and therefore, the ALJ should determine the effect of the subsequent favorable decision on the instant case (*id.*).[2] By order of the district court dated January 28, 2009, the Commissioner's motion to remand was granted (Doc. 12).

On March 2, 2009, Petitioner filed a Petition for Attorney Fees Under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (Doc. 18), which was granted by order of the district court dated March 18, 2009 (Doc. 23). Petitioner was awarded EAJA fees in the amount of $777.96 for representing Plaintiff before this court, as well as costs in the amount of $350.00 (*id.*).

Thereafter, on remand of the instant action, the Commissioner issued a fully favorable decision, finding Plaintiff disabled as of July 8, 2003 (Doc. 24 at 1 & Exs. A–C). In a notice dated August 4, 2009, the Commissioner calculated the disability benefits and awarded Plaintiff $38,720.00 in total past-due benefits (Doc. 24, Ex. D at 2). Thus, in the instant motion Petitioner seeks attorney fees in the amount of $8,902.04, which represents 25% of the total award, less Petitioner's previously awarded EAJA fee (that is, 38,720.00 x .25 = 9,680.00; 9,680.00 - 777.96 = 8,902.04) (Doc. 24 at 3, 5–6). Attached to Petitioner's motion are time records reflecting that Petitioner spent a total of 4.5 hours representing Plaintiff in connection with the instant action (*see* Doc. 24 at 3 & Ex. E).

---

[2] The subsequent application was filed on June 7, 2006, and alleged a disability onset date of March 25, 2006 (*see* Doc. 24, Ex. C). Petitioner states that she represented Plaintiff in the subsequently-filed claim for benefits and was awarded attorney's fees in the amount of $552.50 as a result of the favorable ruling on that claim (*see* Doc. 24 at 2).

The Commissioner does not object to payment of *reasonable* fees pursuant to 42 U.S.C. § 406(b)(1)(A) but asserts that the amount claimed by Petitioner is not reasonable. Specifically, the Commissioner states that strict enforcement of the fee agreement here would result in a windfall to Petitioner, as the amount requested by Petitioner constitutes a de facto hourly rate of $2,151.00 (9,680.00/4.5 = 2,151.00).[3]

II. DISCUSSION

Petitioner argues that she should be awarded $9,680.00, she states that she will refund the EAJA fee of $777.96 to Plaintiff, and she contends that this total fee is reasonable under the facts of this case and consistent with the agreement between Petitioner and Plaintiff. In particular, Petitioner notes that she began representing Plaintiff at the administrative level, eventually filing the instant action on Plaintiff's behalf (Doc. 24 at 4). Although Petitioner acknowledges that the Commissioner filed a motion to remand before a memorandum in support of Plaintiff's complaint was due or filed, Petitioner asserts that she "had to review this matter for viability in federal court, and assisted Plaintiff in obtaining a successful result" (*id.*). Further, Petitioner asserts:

> [A]s a result of the arguments [she] made, the Plaintiff prevailed and received all benefits applied for shortly upon remand and without the need for a supplemental hearing. (Exhibit A). Plaintiff also received additional retroactive Medicare benefits starting in January 2006, instead of the previously granted Medicare start date of September 2008. (Exhibit A p. 1; Exhibit B p. 2). Even though there was a successful outcome of this matter without additional litigation, when accepting this case, counsel was prepared to not only litigate this matter, but possibly be unsuccessful in her efforts and receive no attorney fee whatsoever under the contingency agreement.

(Doc. 24 at 4) (footnote omitted).[4]

---

[3] Petitioner appears to suggest that the de facto hourly rate is $1,978.23, based on the fees she would actually receive after refunding the previously awarded EAJA to Plaintiff (i.e., 9,680.00 - 777.96 = 8,902.04; 8,902.04/4.5 = 1,978.23) (*see* Doc. 24 at 3). The court need not resolve this apparent conflict, as the precise de facto hourly rate does not affect this court's analysis of the issues presented here. Notwithstanding, for purposes of this Report, the court will consider the lower amount to be the de facto hourly rate.

[4] Because Petitioner's labeling system (i.e., regarding the exhibits attached to the instant motion) is somewhat unclear, the undersigned has reviewed all exhibits, but none appear to support Petitioner's assertion that her successful arguments following remand resulted in the award of benefits. For example, the favorable decision of the ALJ following remand states that "[t]he evidence of record supports a fully favorable decision; therefore no hearing has been held" (Doc. 24, Ex. C).

As previously noted, the Commissioner has no objection to an award of fees, as long as the award does not result in a windfall to Petitioner. The Commissioner simply requests that "any order approving a fee for services performed before this Court represent a reasonable fee" (Doc. 27 at 2, 5). Additionally, the Commissioner requests that Petitioner be directed to refund to Plaintiff the EAJA award (or the award granted in the instant motion, if the award here is less than the EAJA award) (*id.* at 5).

Attorneys handling Social Security proceedings may seek fees for their work under two different statutory provisions, the EAJA and 42 U.S.C. § 406. The EAJA allows for an award of attorney fees against the government when the party seeking fees is the prevailing party in a civil action brought against the United States. 28 U.S.C. § 2412. Fees under the EAJA penalize the Commissioner for assuming an unjustified legal position and are paid out of Social Security Administration funds. McGraw v. Barnhart, 450 F.3d 493, 497 (10th Cir. 2006).

Title 42 U.S.C. § 406 allows for recovery of attorney's fees for representation of individuals claiming Social Security benefits, both at the administrative level and in court. "The statute deals with the administrative and judicial review stages discretely: § 406(a) governs fees for representation in administrative proceedings; § 406(b) controls fees for representation in court." Gisbrecht v. Barnhart, 535 U.S. 789, 794, 122 S. Ct. 1817, 152 L. Ed. 2d 996 (2002). For representation of a benefits claimant at the administrative level, an attorney may file a fee agreement with the agency in advance of a ruling on the claim for benefits. § 406(a). If the ruling on the benefits claim is favorable to the claimant, the agency will generally approve the fee agreement subject to a limitation that the fees may not exceed the lesser of 25% of past due benefits or $5,300.00. Gisbrecht, 535 U.S. at 795. For proceedings in court, when a judgment favorable to the benefits claimant is rendered, the court "may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of past due benefits to which the claimant is entitled by reason of such judgment." § 406(b)(1)(A). The fee is payable "out of, and not in addition to, the amount of [the] past due benefits." *Id.* Finally, although fees can be awarded under both the EAJA and § 406(b), Congress has precluded receipt of attorney fees for the same services provided under the EAJA and the Social Security Act. *See* § 406(b)(1)(A).

In 2002, the Supreme Court held that the provision of § 406(b) that limits attorney fees to 25% of past due benefits was designed to control, and not to displace, contingency fee agreements that are within the statutory ceiling. Gisbrecht, 535 U.S. at 808–09. The Court concluded that § 406(b) "calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Id.* at 807. Accordingly, within the "25 percent boundary" permitted by § 406(b), the "attorney for the successful claimant must show that the fee sought is reasonable for the services rendered." *Id.*

The Supreme Court did not specifically define the factors that the lower courts should consider when determining the reasonableness of a § 406(b) fee. It did, however, note with approval the approach of courts that have reduced an attorney's recovery based on the character of the attorney's representation and the results the representation achieved. *Id.* at 808 (citing McGuire v. Sullivan, 873 F.2d 974, 983 (7th Cir. 1989)). For example, if an attorney is responsible for delay, a reduction may be in order to prevent the attorney from profiting from the accumulation of benefits during the case's pendency. *Id.* (citing Rodriguez v. Brown, 865 F.2d 739, 746 (6th Cir. 1989)). In addition, "[i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order." *Id.* (citing Rodriguez and Wells v. Sullivan, 907 F.2d 367, 371 (2d Cir. 1990)).

Although some cases decided since Gisbrecht have generally been deferential to the terms of contingent fee contracts, accepting de facto hourly rates that exceed those for non-contingent fee cases, *see, e.g.,* Joslyn v. Barnhart, 389 F. Supp. 2d 454 (W.D.N.Y. 2005) (awarding de facto hourly rate of $891); McPeak v. Barnhart, 388 F. Supp. 2d 742 (S.D.W. Va. 2005) (approving $681); Hearn v. Barnhart, 262 F. Supp. 2d 1033 (N.D. Cal. 2003) (approving $450); Boyd v. Barnhart, 2002 U.S. Dist. LEXIS 26690 (E.D.N.Y. 2002) (approving $455); Dodson v. Barnhart, 2002 U.S. Dist. LEXIS 27408 (W.D. Va. 2002) (approving $694); Coppett v. Barnhart, 242 F. Supp. 2d 1380 (S.D. Ga. 2002) (approving $350), other courts have declined to do so. Indeed, no exact measure for determining fees exists, and courts have approached the matter in different ways. *See, e.g.,* Ellick v. Barnhart, 445 F. Supp. 2d 1166, 1168 (C.D. Cal. 2006) (analyzing forty-three post-Gisbrecht decisions). The Ellick court noted that in eight of forty-three reported cases, the attorneys had requested fees which were less than twenty-five percent of the awarded benefits, and the courts had

approved those requests. Ellick, 445 F. Supp. 2d at 1168–71. In twenty-three of those cases the courts had approved the requested twenty-five percent contingency fees, although using different reasoning (e.g., strictly deferring to the fee agreement; finding the de facto hourly rate reasonable; considering the fee agreement in addition to other factors, such as the results obtained, attorney's skill and efficiency, and lack of objection by the Commissioner). *Id.* at 1168–69 & n.6. In those cases in which fees were reduced by the courts to less than twenty-five percent of the awarded benefits, two courts used de facto hourly fees of 2.5 times the attorney's normal hourly rate, three reduced fees to rates the judges considered reasonable based on experience, five reduced fees drastically without precise explanation, one excluded fees attributable to paralegal time, and one excluded fees for past-due benefits recovered for the claimant's minor children. *Id.* at 1169–71.

Having considered the facts of this case and the foregoing court decisions, the undersigned is not persuaded that an award of 25% of Plaintiff's past due benefits is reasonable. First, the fee requested is large in relation to the time spent on the case. Gisbrecht, 535 U.S.at 808. Petitioner spent only a total of four and one-half hours representing Plaintiff in this court. Of this time, Petitioner spent a mere twenty-four minutes reviewing the Appeals Council's decision denying Plaintiff's request for review and considering the viability of Plaintiff's claim "for federal court" (Doc. 24, Ex. E (time record)). Petitioner's *secretary* then "prepare[d] forms for court," which presumably included the drafting of Plaintiff's complaint, as no separate time entry appears for drafting the complaint (*see id.*).[5] Thereafter, entries on Petitioner's time record include "1.2 [hours for] stamped docs for service," a function normally performed by support staff and likely performed in less that 1.2 hours in most circumstances, as well as miscellaneous phone calls, drafting of letters or emails, review of this court's orders, and drafting and filing of the EAJA petition (*id.*). Thus, as can be seen from the time record, Petitioner performed little if any substantive work on Plaintiff's behalf, as Petitioner was not required to review the transcript of the administrative proceedings below, conduct legal research, or draft and file a memorandum in support of Plaintiff's complaint. While the court is mindful that Petitioner has been handling this case (and others) without the expectation of being paid unless her arguments prevailed, an hourly rate of nearly $2000.00 is (as

[5] Indeed, the complaint (Doc. 1) is essentially a "boilerplate" complaint and consists of only three pages.

best the undersigned can recall) significantly more than what this court has approved in the past. The contingent risk in the present case should be compensated, but it should not be compensated to the extent Petitioner suggests—to do so would be incompatible with the dictates of Gisbrecht. *See* Gisbrecht, 535 U.S. at 808 ("If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is . . . in order"). In short, unlike many cases in which § 406(b) fees are sought, no extensive effort was required by Petitioner to obtain a reversal of the Commissioner's decision. Rather, the Commissioner filed a motion for remand early in the federal court proceedings.

Second, the court has considered the time involved in processing Plaintiff's claim for DIB. As alleged in the complaint, an ALJ (initially) issued an unfavorable decision on March 24, 2006 (Doc. 1 at 2). More than two years elapsed before the Appeals Council acted on Plaintiff's request for review (by declining review, on May 19, 2008), during which time counsel was not required to do anything on Plaintiff's behalf (with the exception of filing the subsequent application for benefits on Plaintiff's behalf, for which Petitioner has been awarded fees (*see* footnote 2, *supra*)). During the same period, however, benefits, and therefore fees measured as a percentage of the benefits, were accruing. This delay was in no way Petitioner's fault, but it highlights the danger of awarding fees measured purely on a percentage basis. If the Appeals Council had been more diligent, the award of past benefits, and the resulting fees, would have been less. Of course, Petitioner would have received her fees sooner, but the time value of money is skewed when the potential fee increases by 25% of a monthly benefit each month. By the same token, had the Appeals Council been even less diligent than it was, the ultimate resulting award, and claim for fees, would be larger.

Thus, a "downward adjustment from a full contingency fee award is required in this case to arrive at a fee that is 'reasonable for the services rendered.'" *See* Ellick, 445 F. Supp. 2d at 1173. In considering an appropriate downward adjustment, the court notes that the total amount of past due benefits, $38,720.00, as calculated by the Commissioner in the notice dated August 4, 2009, represents benefits owed to Plaintiff for a broad time frame of approximately five and one-half years,

that is, from January 2004 through June 2009[6] (*see* Doc. 24, Ex. D at 2). As previously noted, however, the time frame relevant to Plaintiff's claim for DIB in the instant case is less than three years, that is, from July 8, 2003, through March 26, 2006 (Plaintiff was awarded benefits from March 25, 2006, forward, as a result of a subsequently filed application, granted at the administrative level). Thus, the award relevant to the instant action concerns a time frame of approximately two years, that is, from January 2004, through late March 2006, or approximately two fifths of the total award.

III. CONCLUSION

The undersigned concludes that an appropriate award here—under the unique facts of this case—is $3,872.00, which represents (approximately) 25% of the award of benefits for the time frame relevant to this action (38,720.00 x 2/5 = 15,488.00; 15,488.00 x .25 = 3,872.00), and which results in a de facto hourly rate of $860.00 (3,872.00/4.5 = 860), a figure that is in line with other awards of this nature in this district. Additionally, Petitioner should be required to refund to Plaintiff the previously awarded EAJA fees of $777.96.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the "Petition for Authorization of Attorney Fee Pursuant to the Social Security Act" (Doc. 24) be **GRANTED**, and Petitioner be awarded attorney's fees in the amount of $3,872.00 pursuant to 42 U.S.C. § 406(b).

2. That upon receipt of attorney's fees in the amount of $3,872.00 pursuant to 42 U.S.C. § 406(b), Petitioner shall immediately refund to Plaintiff the previously awarded EAJA sum of $777.96.

At Pensacola, Florida, this 11th day of December 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

[6] In the notice Plaintiff was advised that, although he was found disabled as of July 8, 2003, he must be disabled for five, full, calendar months before he is entitled to benefits; thus, Plaintiff's first month of entitlement to benefits is January 2004 (*see* Doc. 24, Ex. D at 2).

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**